UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIA GARIBAY CORTES,<br><br>        Plaintiff<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 2:15-cv-2277 (GJS)<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

On appeal, Cortes argues that the administrative law judge ("ALJ") erred by (1) failing to provide a clear and convincing reason for rejecting her testimony, (2) improperly discrediting her treating physicians' testimony, and thus forming an improper residual functional capacity, and (3) finding that Cortes could perform jobs requiring language level 1 even though she was determined to be English illiterate. The Court finds that Cortes is correct as to issues 1 and 3, and makes no ruling on issue 2. Accordingly, the Court remands for further proceedings.

## ADMINISTRATIVE DECISION UNDER REVIEW

At Step One, ALJ Mary L. Everstine concluded that Cortes "has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date." [Admin.

Rec. ("AR") 29.][1]  The ALJ determined that Cortes suffered from the "following severe impairments: early degenerative changes of the lumbar spine with low back pain; small disc bulge and mild stenosis at C5-6 with pain; morbid obesity; and hepatomegaly with fatty liver[.]"  [AR 29.]  As none of the impairments, singly or in combination, equaled a listed impairment, the ALJ continued the analysis to determine Cortes's residual functional capacity ("RFC").  The ALJ found Cortes retained the ability to:

> perform medium work …, except for limitation to lifting/carrying 25 pounds frequently and 50 pounds occasionally, standing/walking and sitting for at least 6 hours each in an 8-hour workday, occasional stooping and frequent climbing, balancing, kneeling, crouching, and crawling.

[AR 30.]  Based on this RFC, the ALJ concluded that Cortes could not perform her past work.  [AR 34.]  The ALJ found, as a factual matter, that Cortes could not "communicate in English, and is considered in the same way as an individual who is illiterate in English."  [AR 35.]  Based on Cortes's age, education, work experience, and RFC, the ALJ determined that she could perform the representative occupations of laundry worker (Dictionary of Occupational Titles ("DOT") 361.685-018) and

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two; (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four; (4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled.  If not, proceed to step five; (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.  20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

kitchen helper/dishwasher (DOT 318.687-010), both amply available in the national economy. [*Id.*]

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), this Court reverses only if the Commissioner's "decision was not supported by substantial evidence in the record as a whole or if the [Commissioner] applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "must be 'more than a mere scintilla,' but may be less than a preponderance." *Id.* at 1110-11; *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted). This Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996)). If "the evidence is susceptible to more than one rational interpretation, we must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111.

Even if Cortes shows the Commissioner committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). Courts have "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006). In sum, "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'"

3

*Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (quoting *Stout*, 454 F.3d at 1055-56).

# DISCUSSION

## I. The ALJ's Analysis at Step Five Warrants Remand.

The issue at Step Five is whether substantial evidence supports the ALJ's identification of jobs requiring Language Level 1 where the ALJ determined that Cortes was functionally English-illiterate. The Court finds that the ALJ erred—although the Court has significant doubts that a remand will resolve in Cortes's favor.

### A. The ALJ erred by failing to resolve the conflict between the vocational expert's testimony that Cortes could perform the jobs of kitchen helper and laundry worker and the DOT's language level 1 requirement for those jobs.

The Social Security regulations impose a number of related duties on an ALJ when relating vocational expert testimony to the DOT. First, the ALJ bears "an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT." SSR 00-4p. Second, when a conflict exists, the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* Third, the ALJ must "explain in the determination or decision how he or she resolved the conflict." *Id.* The ALJ satisfied only the first of these three duties.

The vocational expert's determination that Cortes could perform as a kitchen helper and laundry worker conflicted with the DOT, notwithstanding her contrary testimony. The DOT requires Level 1 Language Development for these positions, meaning that Cortes is expected to read 95 to 120 words a minute, recognize 2500 two- to three- syllable words, and print simple sentences. *See* DOT 361.685-018,

1991 WL 672987; DOT 318.687-010, 1991 WL 672755. These requirements, albeit basic, are inconsistent with the English illiteracy that the ALJ found.

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. Feb. 20, 2015); *see Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (holding that, where a conflict between the DOT and vocational expert testimony exists, an ALJ must "then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*."). Here, a conflict existed, and the ALJ adduced no evidence to explain why Cortes's English illiteracy did not bar her from holding the jobs of kitchen helper and laundry worker.[2] Nor did the ALJ explain in her decision how she reconciled the conflict. That was error. *See, e.g.*, *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1004 (9th Cir. Aug. 4, 2015) (remanding where ALJ did not resolve conflict between claimant's RFC and Level 2 reasoning). "The ALJ's failure to resolve an apparent inconsistency … leave[s] [the Court] with a gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin*, 778 F.3d at 846.

That the ALJ included illiteracy in her hypothetical to the vocational expert, or that the vocational expert said her testimony was consistent with the DOT, does not change the result. The vocational expert's testimony was facially inconsistent with

---

[2] The Court's practical experience suggests that the lack of English literacy may reduce the occupational base of these unskilled positions, but (especially in California) still leaves a sufficient number of jobs that Cortes could perform. However, the Court's job is to rule based on the Commissioner's administrative record, not its own understanding of the job market.

the DOT, and the ALJ bears the burden to ascertain whether a conflict exists. SSR 00-4p; *Zavalin*, 778 F.3d at 846; *Massachi*, 486 F.3d at 1153 ("[T]he ALJ must first determine whether a conflict exists."). Nor does the vocational expert's testimony control whether a conflict exists. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation" (quoted in *Massachi*, 486 F.3d at 1153)). Accordingly, the ALJ did not satisfy her duty to resolve the conflict between the DOT and her literacy finding.

That Cortes previously held a job requiring Language Level 2 also does not save the Commissioner. If the Commissioner had adduced evidence showing that Cortes performed her prior work as a harvester in a manner that required Language Level 2, the Court might agree that Cortes's past work would demonstrate sufficient language skills. *See* [AR 76]; DOT 403.687-010, 1991 WL 673305. However, the record contains no such evidence, and the Court will not speculate under what conditions Cortes was a harvester.

The Commissioner invokes a parade of horribles by characterizing Cortes's argument as a "contention that an illiterate individual is per se unable to work jobs categorized as language level 1." [Dkt. 25 ("Jt. Stip.") at 7.] Neither Cortes's argument nor the Court's conclusion mandates such a sweeping rule. Rather, the Court applies the normal rules regarding a conflict in testimony, and determines a conflict that required an explanation exists, and there is not "persuasive evidence" to resolve the conflict in this instance.

**B. The Court cannot say that the ALJ's error is harmless.**

The Commissioner further argues that, even if the ALJ violated her duty to resolve a conflict between vocational expert testimony and the DOT, the error was harmless because the Commissioner could have relied on the Grids alone to satisfy her Step Five burden. "[I]f the Commissioner's request that we dismiss the ALJ's error as harmless 'invites this Court to affirm the denial of benefits on a ground not

1  invoked by the Commissioner in denying the benefits originally, then [the Court]
2  must decline.'" *Stout*, 454 F.3d at 1054 (quoting *Pinto v. Massanari*, 249 F.3d 840,
3  847 (9th Cir. 2001)). Regardless of whether the Commissioner's application of the
4  Grid regulations is correct (an issue the Court has not examined), it is clear from the
5  ALJ's opinion that she concluded the Grids do not dictate an outcome:

> If the claimant had the residual functional capacity to perform the full range of medium work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.25. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. **To determine the extent to which these limitations erode the unskilled medium occupational base**, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

[AR 35 (emphasis added).] Because the ALJ did not rely on regulations and guidance applying the Grids without resort to a vocational expert, the Commissioner may not do so here. Remand is required.

## II. The ALJ Did Not Provide a Clear and Convincing Reason for Rejecting Cortes's Credibility.

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. Nov. 3, 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

7

claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the ALJ failed to present any clear reason why she found Cortes to be less than credible. The only mention of Cortes's credibility is in the following boilerplate:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[AR 33.] Such boilerplate is insufficient to satisfy the "clear and convincing reasons" test, as it provides no basis for the Court to evaluate how the ALJ arrived at that conclusion, or even what level of weight Cortes's testimony was given. *See Brown-Hunter*, 806 F.3d at 493. Although the Commissioner argues here that "the ALJ relied on the fact that Plaintiff received only conservative treatment for her allegedly disabling conditions," the opinion does no such thing. [Jt. Stip. at 28.] Rather, the ALJ cites Cortes's allegedly conservative treatment as reasons to discredit the severity of the limitations "as indicated by Drs. Bockoff and Young." [AR 34.]

Because the Court has already decided to remand this case, it need not determine whether the failure to specify a reason clearly is harmless where other findings made by the ALJ disclose her analysis. On remand, the ALJ must clarify why she found Cortes not to be credible, and identify evidence that supports that conclusion. That said, if the ALJ finds that Cortes is less than credible because of a finding of conservative treatment inconsistent with disabling symptoms, the ALJ should consider, among other things, the level of pain management Cortes underwent. While "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment," *Parra v. Astrue*, 481 F.3d 742,

751 (9th Cir. 2007), an ALJ errs in relying on conservative treatment if "the record does not reflect that more aggressive treatment options are appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010).  And administration of serious pain medication, such as Vicodin [*see* AR 383], might not properly be characterized as mere conservative treatment.  *See, e.g.*, *De Herrera v. Astrue*, 372 Fed. App'x 771, 776 (9th Cir. 2010) (relying on *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) for proposition that "[t]he [conservative treatment] rule clearly has no application to powerful narcotics like Vicodin, … [because] [a] treatment that incapacitates as it eases pain cannot be considered evidence that the underlying pain is not debilitating.").

### III.  Other Issues

Cortes raises numerous other defects involving the ALJ's analysis of medical opinions (and the weight to be afforded them) and the construction of Cortes's RFC. In light of the Court's finding of two remandable errors, the Court need not address these issues, other than to conclude that a remand for benefits in not warranted.  The Court requires the ALJ to consider the other issues raised in Cortes's briefing and modify her opinion as appropriate.

### CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS HEREBY ORDERED.**

DATED: March 28, 2016

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

9